

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-1432-16

**Ex parte KELCEY KENT REECE, Appellant**

### DISSENT TO REFUSAL OF APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE ELEVENTH COURT OF APPEALS MIDLAND COUNTY

**KELLER, P.J., filed a dissenting opinion in which ALCALA, J., joined.**

Appellant challenges the facial constitutionality of the part of the harassment statute that pertains to electronic communications. In rejecting his First Amendment challenge to that provision, the court of appeals relied upon our prior decision in *Scott v. State*.[1] *Scott* held that the part of the harassment statute pertaining to telephone calls did "not implicate the free-speech guarantee of the First Amendment."[2] The court of appeals in this case likewise held that the provision before it does

---

[1] *See Ex parte Reece*, No. 11-16-00196-CR, 2016 Tex. App. LEXIS 12649 (Tex. App.—Eastland November 30, 2016) (not designated for publication) (discussing *Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010)).

[2] 322 S.W.3d at 669.

"not implicate protected speech under the First Amendment."[3] I would grant review for two reasons.

First, the electronic communications provision is much broader than the provision at issue in *Scott*. The provision at issue in *Scott* was *"directed only at persons who, with the specific intent to inflict emotional distress, repeatedly use the telephone to invade another person's personal privacy."*[4] By contrast, the electronic communications provision sweeps within its reach any electronic communication, regardless of whether that communication is directed at a particular person or infringes on the person's privacy:

> A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. . . . "Electronic communication" means a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system.[5]

The electronic communications provision lists two types of communications that are included within the reach of the statute. As in *Scott*, they are directed at a particular person and arguably infringe on that person's privacy:

> The term ["electronic communications"] *includes*:
>
> (A) a communication initiated by electronic mail, instant message, network call, or facsimile machine; and
>
> (B) a communication made to a pager.[6]

But the word "includes" is a term "of enlargement and not of limitation or exclusive enumeration"

---

[3] *Reece*, 2016 Tex. App. LEXIS 12649, at *6.

[4] 322 S.W.3d at 669

[5] TEX. PENAL CODE § 42.07(a)((7), (b)(1).

[6] *Id.* § 42.07(b)(1) (emphasis added).

and its use "does not create a presumption that components not expressed are excluded."[7]

Consequently, the electronic communications provision sweeps more broadly than the enumerated examples and reaches any electronic communication that otherwise meets the requirement of being annoying, harassing, etc. The breadth of this statute can be accurately characterized as "breathtaking," and, as such, is appropriate for review.[8] It may be possible to save the statute through a narrowing construction[9] or through severance[10] so that only the enumerated examples are covered, or communications similar to those enumerated examples, but it is not clear at this juncture that the statute can be saved in such a fashion and that is a matter that would need to be taken up on review.

The second reason to grant review is to re-examine *Scott*. In *Scott*, the Court defined the term "repeated telephone communications" to mean "more than one telephone call in close enough proximity to properly be termed a single episode."[11] The Court also stated that, "in the usual case, persons whose conduct violates [the telephone provision] will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake."[12] In my dissent in *Scott*, I criticized both of these supposed

---

[7] *Ex parte Perry*, 483 S.W.3d 884, 909 (Tex. Crim. App. 2016).

[8] *See Ex parte Thompson*, 442 S.W.3d 325, 350 (Tex. Crim. App. 2014).

[9] *See Perry*, 483 S.W.3d at 903 ("A Texas court has a duty to employ, if possible, a reasonable narrowing construction in order to avoid a constitutional violation.").

[10] *Id.* ("Even if a narrowing construction is not feasible, a state court may cure an overbreadth problem by severing a portion of the statute.").

[11] 322 S.W.3d at 669 n.12.

[12] *Id.* at 670.

restrictions on the scope of the telephone harassment provision. I pointed out that the Court's definition of "repeated" was not supported by any source and was inconsistent with what the term is commonly understood to mean.[13] And I argued that the language of the harassment statute was not susceptible to being construed to reach only cases in which the actor solely intended to inflict emotional harm and had no legitimate interest in communication.[14] In *Wilson v. State*, a majority of the Court agreed with me, and the Court disavowed this narrowing language in *Scott*.[15]

Four judges on this Court indicated that *Wilson*'s retraction of the narrowing language in *Scott* made the *Scott* decision ripe for re-examination.[16] As with the telephone harassment provision in *Scott*, the electronic communications harassment provision in the present case proscribes "repeated" communications and proscribes such communications even if they have a legitimate communicative purpose. But the broader scope of the electronic communications provision exacerbates the concerns articulated by these four judges. This provision is not limited to emails,

---

[13] *Id.* at 673 (Keller, P.J., dissenting).

[14] *Id.* at 676-77.

[15] *Wilson v. State*, 448 S.W.3d 418, 420, 422-23 (Tex. Crim. App. 2014) ("We hold that (1) the phrase 'repeated telephone communications' does not require the communications to occur within a certain time frame in relation to one another, and (2) a facially legitimate reason for the communication does not negate per se an element of the statute."). *See also id.* at 422-23, 425.

[16] *Id.* at 426 (Keller, P.J. concurring, joined by Johnson, J.) ("I do not share the Court's optimism that it will be 'exceedingly rare'" that the State will be able to show two communications with the requisite intent. "At the time *Scott* was decided, I said that 'the mischief this statute can create is enormous,' and the present case has only reinforced that conclusion.") (brackets omitted); *Id.* at 427 (Cochran, J., concurring, joined by Johnson and Alcala, JJ.) ("[U]nder the majority's interpretation, any two annoying calls made by a single person to another over any undefined period of time suffices to create criminal liability. . . . I do not think that such a position can withstand constitutional scrutiny."); *Id.* at 430-31 (Alcala, J., dissenting on motion for rehearing) (describing this Court's holding in *Wilson* as "an about-face from our recent precedent in *Scott*" and an act that "reinterprets[s] the telephone harassment statute").

instant messages, or pager calls. It also applies, for example, to facebook posts, message-board posts, blog posts, blog comments, and newspaper article comments. If a person makes two posts or comments on the internet with the intent to annoy or alarm another, and those two communications are reasonably likely to annoy, alarm, or offend the same person, then a person can be subjected to criminal punishment under this provision.

Criticism can be annoying, embarrassing, or alarming, and it is often intentionally so. Under this statute, a person can criticize another on the internet once, but not twice. That is true even if the criticism is of the person's political views. A blog owner or authorized moderator who wishes a more genteel approach to debate may have the authority to block or eliminate posts to enforce a more refined atmosphere at the owner's website, but the First Amendment prohibits the government from using the coercion of the criminal law to enforce a more refined atmosphere on the internet.

I respectfully dissent.

Filed: April 12, 2017

Publish