# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00207-CR
NO. 03-18-00208-CR

**Ex parte Scott Ogle**

**FROM COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
NOS. 17-3191CR & 17-3192CR, HONORABLE DAVID GLICKLER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In two separate charging instruments, Scott Ogle was alleged to have sent "repeated electronic communications to" two police officers; to have sent those communications "with intent to harass, annoy, alarm, abuse, torment or embarrass" the police officers; and to have sent those communications "in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another, to-wit: repeated phone calls, calls for service, and/or emails many of which contained offensive or disparaging language." *See* Tex. Penal Code § 42.07(a)(7).  After being charged, Ogle filed an application for writ of habeas corpus urging that the charges against him should be dismissed because the Penal Code provision serving as the basis for his charges is, according to him, facially unconstitutional. *See id.* § 42.07(c) (stating that offense is misdemeanor); Tex. Code Crim. Proc. art. 11.09 (setting out procedure for filing application for writ of habeas corpus for individuals charged with misdemeanor offenses).  After convening a hearing, the county court at law denied the writ application.  Ogle appeals the ruling by the county court at law.  We will affirm the order by the county court at law denying Ogle's application for writ of habeas corpus.

## STANDARD OF REVIEW AND GOVERNING LAW

As mentioned above, Ogle sought to challenge the constitutionality of a statute through a pretrial habeas application. "[P]retrial habeas, followed by an interlocutory appeal, is an 'extraordinary remedy,' and 'appellate courts have been careful to ensure that a pretrial writ is not misused to secure pretrial appellate review of matters that in actual fact should not be put before appellate courts at the pretrial stage.'" *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (quoting *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010)). "Pretrial habeas can be used to bring a facial challenge to the constitutionality of the statute that defines the offense but may not be used to advance an 'as applied' challenge." *Id.* A determination regarding whether a statute is facially unconstitutional is a question of law subject to de novo review. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). A facial challenge is essentially "a claim that 'the statute, by its terms, always operates unconstitutionally.'" *Lebo v. State*, 474 S.W.3d 402, 405 (Tex. App.—San Antonio 2015, pet. ref'd) (quoting *Gillenwaters v. State*, 205 S.W.3d 534, 536 n. 2 (Tex. Crim. App. 2006)). When assessing a statute's constitutionality, reviewing courts "presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily" when enacting the statute. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). Moreover, the party presenting the statutory challenge has the burden of establishing that the statute is unconstitutional. *Id.*

"The First Amendment overbreadth doctrine holds that a statute is facially invalid if, as written, it sweeps within its coverage a 'substantial' amount of First Amendment-protected expression as compared to any activity it proscribes constitutionally." *Ex parte Perry*, 471 S.W.3d 63, 88 (Tex. App.—Austin 2015) (quoting *Ex parte Lo*, 424 S.W.3d at 18), *rev'd in part on other*

2

*grounds*, 483 S.W.3d 884 (Tex. Crim. App. 2016). "[T]he overbreadth doctrine allows a statute to be invalidated on its face even if it has legitimate application, and even if the parties before the court have suffered no constitutional violation." *Ex parte Ellis*, 309 S.W.3d at 91. "The overbreadth doctrine is 'strong medicine' that should be employed 'sparingly' and 'only as a last resort.'" *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). "[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* (quoting *Broadrick*, 413 U.S. at 615).

## STATUTORY FRAMEWORK

The provision of the Penal Code at issue in this case is section 42.07. That provision provides, in relevant part, as follows:

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . .
>
>> (4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;
>>
>> . . . or
>>
>> (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

Tex. Penal Code § 42.07(a)(4), (7); *see also id.* § 42.07(b)(1) (defining "[e]lectronic communication").

Previously, the court of criminal appeals addressed the constitutionality of subsection 42.07(a)(4). *See Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010), *abrogated on other grounds*

3

*by Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014). Specifically, the court was asked to address whether subsection 42.07(a)(4) implicated the free-speech guarantee of the First Amendment when confronted with a vagueness and an overbreadth challenge to the statute. *Id.* at 667-69. Although the court noted that the Free Speech Clause "generally protects the free communication and receipt of ideas, opinions, and information," it also explained that "[t]he State may lawfully proscribe communicative conduct (i.e., the communication of ideas, opinions, and information) that invades the substantial privacy interests of another in an essentially intolerable manner." *Id.* at 668-69. Further, the court observed that the plain language of the statute required an individual to have the specific intent "to inflict harm on the victim in the form of one of the listed types of emotional distress" and that the statute required the individual to repeatedly make phone calls to the alleged victim in a manner that was "reasonably likely to," consistent with the language of the statute, "harass, annoy, alarm, abuse, torment, embarrass, or offend an average person." *Id.* at 669.

In light of the preceding, the court concluded that the provision does not implicate the free-speech guarantee afforded by the First Amendment because the statute "is directed only at persons who, with the specific intent to inflict emotional distress, repeatedly use the telephone to invade another's privacy and do so in a manner reasonably likely to inflict emotional distress," meaning that "the conduct to which the statutory subsection is susceptible of application will be, in the usual case, essentially noncommunicative, even if the conduct includes spoken words." *Id.* at 669-70. In other words, the court explained that, "in the usual case, persons whose conduct violates § 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake." *Id.* at

4

670. Further, the court reasoned that "[t]o the extent that the statutory subsection is susceptible of application to communicative conduct, it is susceptible of such application only when that communicative conduct is not covered by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner." *Id.*

Following that ruling by the court of criminal appeals, this Court was presented with a similar set of arguments regarding subsection 42.07(a)(7), which is the provision at issue in this case. *See Blanchard v. State*, No. 03-16-00014-CR, 2016 WL 3144142 (Tex. App.—Austin June 2, 2016, pet. ref'd) (mem. op., not designated for publication). In *Blanchard*, this Court explained that "[t]he free-speech analysis in *Scott* is equally applicable to subsection 42.07(a)(7)." *Id.* at *3. Although this Court noted that there is a slight difference in the language in subsections 42.07(a)(4) and 42.07(a)(7) in that subsection 42.07(a)(4) "provides an alternative manner of committing the offense by making repeated phone calls 'anonymously,'" this Court reasoned that the slight "textual difference is inconsequential to the First Amendment analysis" and noted that the remaining statutory language in the two subsections "is identical." *Id.* (quoting Tex. Penal Code § 42.07(a)(4)).

Further, this Court observed that "[e]ach of the subsections in section 42.07 has the same subjective intent requirement that the actor engage in the particular form of communicative conduct with the specific intent to" harm the victims by inflicting one of the types of emotional distress listed in the statute. *Id.* For that reason, this Court reasoned that "an actor who violates subsection 42.07(a)(7) has no more an intent to engage in legitimate communication of ideas, opinions, or information than an actor whose telephone calls violate subsection 42.07(a)(4)" and that

5

"[r]epeated electronic communications made with the specific intent to inflict one of the designated types of emotional distress 'for its own sake' invade the substantial privacy interests of the victim in 'an essentially intolerable manner.'" *Id.* (quoting *Scott*, 322 S.W.3d at 670). Accordingly, this Court concluded that those types of communications "are not the type of legitimate communication that is protected by the First Amendment," that they "do not implicate speech protected by the First Amendment," and that the individual seeking habeas relief "failed to establish that, on its face, section 42.07(a)(7) violates the constitution by being overbroad or unduly vague." *Id.* at *3-4.

In addition to this Court, several of our sister courts of appeals have reached the same conclusion regarding the constitutionality of subsection 42.07(a)(7) following the decision in *Scott*. *See Ex parte Reece*, No. 11-16-00196-CR, 2016 WL 6998930, at *3 (Tex. App.—Eastland Nov. 30, 2016, pet. ref'd) (mem. op., not designated for publication) (determining that vagueness challenge and overbreadth claim failed because "the electronic communications proscribed by subsection (a)(7) do not implicate protected speech under the First Amendment"); *Lebo*, 474 S.W.3d at 408 (concluding "that the electronic communications proscribed by subsection (a)(7) do not implicate protected speech under the First Amendment" and that defendant "failed to establish that section 42.07(a)(7) violates the constitution by being overbroad or unduly vague"); *Duran v. State*, Nos. 13-11-00205-CR, -00218-CR, 2012 WL 3612507, at *3-4 (Tex. App.—Corpus Christi Aug. 23, 2012, pet. ref'd) (mem. op., not designated for publication) (rejecting argument that subsection 42.07(a)(7) was facially vague and overbroad and deciding that subsection "42.07(a)(7) does not implicate the free-speech guarantee of the First Amendment" and "does not encompass a substantial amount of expressive activity that is protected by the First Amendment").

6

## DISCUSSION

In a single issue on appeal, Ogle asserts that "section 42.07(a)(7) is facially overbroad under the First Amendment to the United States Constitution." When presenting this issue on appeal, Ogle acknowledges the analysis from *Scott* but does not address this Court's *Blanchard* opinion applying the analysis from *Scott* when deciding that the limitations imposed by subsection 42.07(a)(7) did not implicate speech protected by the First Amendment. When asserting that the analysis from *Scott* should not govern the outcome of this case, Ogle argues that subsection 42.07(a)(7) is overbroad because it restricts noncommercial speech based on its content.

As support for his assertion that subsection 42.07(a)(7) is facially unconstitutional, Ogle points to various opinions issued by the Supreme Court that Ogle contends undermine the decision in *Scott*. Further, Ogle asserts that several of those cases were not issued until after the court of criminal appeals decided *Scott* and that, therefore, the court of criminal appeals did not have the benefit of the guidance offered by those cases when it decided *Scott*.

For example, Ogle refers to *Reed v. Town of Gilbert, Arizona*, in which the Supreme Court explained as follows:

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

7

135 S.Ct. 2218, 2227 (2015) (internal citations omitted).  In light of the portion of the analysis quoted above, Ogle contends that subsection 42.07(a)(7) "defines the regulated speech by its *function* ('reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another') and its *purpose* ('intent to harass, annoy, alarm, abuse, torment, or embarrass another')."

Similarly, Ogle refers to *United States v. Stevens* in which the Supreme Court stated as follows:

> "From 1791 to the present," however, the First Amendment has "permitted restrictions upon the content of speech in a few limited areas," and has never "include[d] a freedom to disregard these traditional limitations."  These "historic and traditional categories long familiar to the bar[]"—including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct[]—are "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem."

559 U.S. 460, 468-69 (2010) (internal citations omitted).  In addition, Ogle points to *United States v. Alvarez*, where the Supreme Court noted as follows:

> [C]ontent-based restrictions on speech have been permitted, as a general matter, only when confined to the few "'historic and traditional categories [of expression] long familiar to the bar.'"  Among these categories are advocacy intended, and likely, to incite imminent lawless action, obscenity, defamation, speech integral to criminal conduct, so-called "fighting words," child pornography, fraud, true threats, and speech presenting some grave and imminent threat the government has the power to prevent, although a restriction under the last category is most difficult to sustain. These categories have a historical foundation in the Court's free speech tradition.

567 U.S. 709, 717-18 (2012) (plurality op.) (internal citations removed).

In light of the language from *Stevens* and *Alvarez*, Ogle contends that "[t]he speech restricted by section 42.07(a)(7) falls into none of the recognized unprotected categories, and so is

8

protected" by the First Amendment. *See Stevens*, 559 U.S. at 472 (explaining that its case law should not be construed as establishing "freewheeling authority to declare new categories of speech outside the scope of the First Amendment" but recognizing that there could be "some categories of speech that have been historically unprotected, but have not yet been specifically identified or discussed as such").

As an initial matter, we note that none of the statutes at issue in the cases mentioned above involved the type of intentionally harassing conduct prohibited by subsection 42.07(a)(7). *See* Tex. Penal Code § 42.07(a)(7); *see also Reed*, 135 S.Ct. at 2224-25 (deciding that sign ordinances "are content-based regulations that cannot survive strict scrutiny"); *Alvarez*, 567 U.S. at 715-16, 722, 730 (evaluating statute criminalizing lying about being awarded Congressional Medal of Honor, noting that government had "not demonstrated that false statements generally should constitute a new category of unprotected speech," and concluding that statute "infringes upon speech protected by the First Amendment"); *Stevens*, 559 U.S. at 464, 472, 482 (addressing statute criminalizing "the commercial creation, sale, or possession of certain depictions of animal cruelty," concluding that "'depictions of animal cruelty'" is not category of speech "outside the scope of the First Amendment," and deciding that statute was "substantially overbroad").

Additionally, rather than drawing a distinction based on the subject matter or content of a message, subsection 42.07(a)(7) seems to instead draw a distinction based on the manner in which a message is conveyed to the recipient. Further, although Ogle attempts to frame the proscriptions found in subsection 42.07(a)(7) as bearing on the function and purpose of a message, Ogle has not referred to any cases standing for the proposition that narrow restrictions on repeated

9

and intentionally harassing conduct constitute a facial distinction defining speech by its purpose or function. *Cf. Webb v. Schlagal*, 530 S.W.3d 793, 805 (Tex. App.—Eastland 2017, pet. denied) (reasoning that "[t]o the extent that . . . e-mails and online posts constituted stalking or" threats, "they were not protected speech under the First Amendment" and noting that "[c]ourts have made distinctions between communication and harassment; the difference is one between free speech and conduct that may be proscribed").

Moreover, nothing in the language of the Supreme Court opinions persuades us that this Court could or should ignore the analysis from *Scott* in which the court of criminal appeals noted the State may "proscribe communicative conduct . . . that invades the substantial privacy interests of another in an essentially intolerable manner" and concluded that the subsection 42.07(a)(4) did not implicate the free-speech guarantee afforded by the First Amendment because the statute only applies to individuals who have "the specific intent to inflict emotional distress" by repeatedly making phone calls "to invade another's privacy . . . in a manner reasonably likely to inflict emotional distress" and, accordingly, because the statute applies to conduct that is "essentially noncommunicative, even if the conduct includes spoken words." 322 S.W.3d at 668-70; *see also Cohen v. California*, 403 U.S. 15, 21 (1971) (explaining that government may "shut off discourse solely to protect others from hearing it" when "privacy interests are being invaded in an essentially intolerable manner"). As set out above, this Court has previously determined that the analysis from *Scott* applies with equal force to subsection 42.07(a)(7). *See Blanchard*, 2016 WL 3144142, at *3.

Additionally, although Ogle posits that the decision in *Scott* would have been different had it been decided after the release of the more recent opinions by the Supreme Court

10

discussed above, we note that after the Supreme Court decided those cases, the court of criminal appeals handed down an opinion specifically endorsing its analysis from *Scott*. *See Wagner v. State*, 539 S.W.3d 298, 311 (Tex. Crim. App. 2018). When addressing a Penal Code provision allowing prosecutions for intentionally or knowingly communicating in a "threatening or harassing manner" with another in violation of a protective order, *see* Tex. Penal Code § 25.07(a)(2)(A), the court of criminal appeals determined that the statute did not implicate any constitutionally protected speech, summarized its analysis from *Scott*, and concluded that their "reasoning from that case leads us to conclude that appellant's overbreadth challenge should be rejected." *See Wagner*, 539 S.W.3d at 301, 311.

In his final set of arguments, Ogle urges that subsection 42.07(a)(7) is broader than the provision considered in *Scott* and, therefore, contends that the analysis from *Scott* does not control. As support for this, Ogle points to a dissenting opinion issued by the court of criminal appeals after *Scott*. As set out previously, one of our sister courts of appeals, like this Court, overruled a challenge asserting that subsection 42.07(a)(7) was overbroad and relied on the analysis from *Scott* as support for that conclusion. *See Ex parte Reece*, 2016 WL 6998930, at *3. The court of criminal appeals refused to grant the petition for discretionary review filed in that case, and a dissenting opinion to that decision was issued stating that "the electronic communications provision is much broader than the provision at issue in *Scott*." *See Ex parte Reece*, 517 S.W.3d 108, 109 (Tex. Crim. App. 2017) (Keller, J., dissenting).

Specifically, the dissent contended that the subsection addressed in *Scott*, subsection 42.07(a)(4), "was 'directed only at persons who, with the specific intent to inflict emotional distress,

11

repeatedly use the telephone to invade another person's personal privacy'" but argued that, in contrast, subsection 42.07(a)(7) purportedly "sweeps within its reach any electronic communication, regardless of whether that communication is directed at a particular person or infringes on the person's privacy." *Id.* (quoting *Scott*, 322 S.W.3d at 669). As support for its argument, the dissent noted that subsection 42.07(a)(7) applies to "electronic communications" and sets out certain examples of what qualified as an electronic communication. *See id.* The statutory definition at that time listed the following specific examples of what qualified as an "electronic communication": "a communication initiated by electronic mail, instant message, network call, or facsimile machine" and "a communication made to a pager."[1] *See* Act of May 26, 2001, 77th Leg., R.S., ch. 1222, § 1, sec. 42.07(b)(1), 2001 Tex. Gen. Laws 2795, 2795 (amended 2013, 2017) (current version at Tex. Penal Code § 42.07(b)(1)). Although the dissent recognized that the specific examples of electronic communications listed in the statute, like the conduct at issue "in *Scott*, . . . are directed at a particular person and arguably infringe on that person's privacy," the dissent suggested that the use of the word "includes" in the definition "sweeps more broadly than the enumerated examples," potentially rendering the provision unconstitutional. *Ex parte Reece*, 517 S.W.3d at 109-10.

Even though the dissent in *Ex parte Reece* proposed an interesting construction of section 42.07, that construction was not adopted by a majority of the court. Accordingly, there has been no binding decision declaring subsection 42.07(a)(7) or, for that matter, subsection 42.07(a)(4)

---

[1] After the court of criminal appeals denied the petition for review, the legislature amended subsection 42.07(b)(1) to include additional modes of communication within the definition of electronic communication. *See* Act of May 27, 2017, 85th Leg., R.S., ch. 522, § 13, sec. 42.07(b)(1), 2017 Tex. Gen. Laws (current version at Tex. Penal Code § 42.07(b)(1)).

unconstitutionally overbroad. *See McKinney v. State*, 177 S.W.3d 186, 205 n.15 (Tex. App.—Houston [1st Dist.] 2005) (recognizing that dissent is not binding precedent), *aff'd*, 207 S.W.3d 366 (Tex. Crim. App. 2006). On the contrary, this Court and several other intermediate appellate courts have specifically found that subsection 42.07(a)(7) is not unconstitutionally overbroad. *See Ex parte Reece*, 2016 WL 6998930, at *3; *Blanchard*, 2016 WL 3144142, at *3-4; *Lebo*, 474 S.W.3d at 408; *Duran*, 2012 WL 3612507, at *3-4.

Moreover, although the dissent referred to *Scott*'s characterization of subsection 42.07(a)(4) as being directed at people repeatedly using a telephone to invade the personal privacy of another with the intent to inflict emotional distress, *see Ex parte Reece*, 517 S.W.3d at 109, the actual language of subsection 42.07(a)(4) provides that "[a] person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." Tex. Penal Code § 42.07(a)(4). Similarly, the language in subsection 42.07(a)(7) provides that "[a] person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." *Id.* § 42.07(a)(7).

In light of the similarity of those provisions, we believe that subsection 42.07(a)(7) can reasonably be construed as being directed at people repeatedly using electronic communications to invade the personal privacy of another with the intent to inflict emotional distress. *Cf. Ex parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000) (stating that when construing statutes,

13

reviewing courts examine plain language of statute); *Crouch v. State*, 838 S.W.2d 252, 254 (Tex. Crim. App. 1992) (explaining that "[s]tatutes should be read as a whole and construed to give meaning to each part"). Accordingly, we are not persuaded that the use of the word "includes" in the definition for "[e]lectronic communication," without more, renders subsection 42.07(a)(7) unconstitutionally overbroad.

For all of the reasons previously given and in light of the analyses from *Scott* and from our binding precedent in *Blanchard*, we overrule Ogle's sole issue on appeal.[2]

## CONCLUSION

Having overruled Ogle's sole issue on appeal, we affirm the county court at law's order denying Ogle's application for writ of habeas corpus.

---

[2] In his brief, Ogle asserts that "[t]he right to annoy public servants is protected not only by the Free Speech Clause, but also by the Redress of Grievances Clause of the First Amendment." However, other than referring to the Grievances Clause, Ogle does not provide any additional argument or cite any case law supporting the idea that the Grievances Clause has any applicability in this case. *See* Tex. R. App. P. 38.1(i) (providing that appellant's brief must contain "appropriate citations to authorities"); *Rodriguez v. State*, 329 S.W.3d 74, 81 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (explaining that failure to cite authority for appellate issue can result in waiver). Moreover, Ogle did not present this claim in his application for writ of habeas corpus that serves as the basis for this appeal. *See* Tex. R. App. P. 33.1(a) (explaining that to preserve error for appeal, record must show that complaint was made to trial court and that trial court ruled on request or refused to rule and that "complaining party objected to the refusal"); *Ex parte Tutton*, No. 10-14-00360-CR, 2015 WL 4384496, at *3 (Tex. App.—Waco July 9, 2015, pet. ref'd) (mem. op., not designated for publication) (noting that arguments presented on appeal were not "made in his habeas-corpus application" and explaining that if appellate arguments "do not comport with arguments made in the trial court," complaints are not preserved for appellate consideration).

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   August 1, 2018

Do Not Publish