**Affirmed and Majority Opinion filed December 31, 2020.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-19-00372-CR
## NO. 14-19-00373-CR

**THE STATE OF TEXAS, Appellant**

**v.**

**JASPER ROBIN CHEN, Appellee**

**On Appeal from the County Criminal Court at Law No. 16
Harris County, Texas
Trial Court Cause Nos. 2233753 and 2250796**

## MAJORITY OPINION

The State charged appellee by information with the misdemeanor offense of, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, sending repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another on or about April 15, 2018 continuing through October 29, 2018. Tex. Penal Code Ann. § 42.07(a)(7), (c). Appellee filed an application for writ of habeas corpus and motion to quash the

information, arguing that the statute under which he was charged, Penal Code section 42.07(a)(7) (the "electronic-communications-harassment statute"), is facially unconstitutional and unconstitutional as applied to him under the First Amendment. U.S. Const. amend. I; *see* Tex. Code Crim. Proc. Ann. art. 11.09. The trial court granted the application, a writ of habeas corpus was issued, and appellee and the State appeared for a hearing on the application. After the hearing, the trial court concluded the statute is facially unconstitutional and granted habeas-corpus relief and the motion to quash the information, thereby discharging the appellee. *See* Tex. Code Crim. Proc. Ann. art. 11.40. The State appealed.[1] We affirm.

## I. ANALYSIS

Regarding electronic communications, the harassment statute reads, in relevant part:

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:
>
> . . . .
>
> > (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

---

[1] In a unitary notice of appeal, the State appealed both "from the trial court's order dismissing the information in cause number 2233753," which has been assigned case number 14-19-00373-CR by this court, "and from its order granting habeas relief in cause number 2250796," which has been assigned case number 14-19-00372-CR by this court. The State may appeal an order that dismisses an indictment, information, or complaint. Tex. Code Crim. Proc. Ann. art. 44.01(a)(1). In addition, while a respondent in a habeas action under Code of Criminal Procedure article 11.09, such as the State here, has no general right of appeal from an adverse ruling, "if the granting of relief by a habeas corpus court results in one of the enumerated situations within Art. 44.01(a), the State may appeal regardless of what label is used to denominate the proceeding which results in the order being entered," which is the situation here given that the effect of the trial court's habeas-corpus judgment is to dismiss the information. *Alvarez v. Eighth Court of Appeals of Tex.*, 977 S.W.2d 590, 593 (Tex. Crim. App. 1998). The issue of whether the State was required to bring both appeals is not before us, and we express no opinion on that subject.

(b) In this section:

(1) "Electronic communication" means a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system. The term includes:

(A) a communication initiated through the use of electronic mail, instant message, network call, a cellular or other type of telephone, a computer, a camera, text message, a social media platform or application, an Internet website, any other Internet-based communication tool, or facsimile machine; and

(B) a communication made to a pager.

Tex. Penal Code Ann. § 42.07(a)(7), (b)(1). The State argues that the trial court erred in determining that the electronic-communications-harassment statute is facially unconstitutional. Whether a statute is facially constitutional is a question of law that we review de novo. *Ex Parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). Ordinarily, the party challenging the statute carries the burden to establish the statute's unconstitutionality. *Id.* at 15.

## A.    Applicability of the First Amendment

We begin with the State's argument that the electronic-communications-harassment statute does not implicate a substantial amount of speech protected by the First Amendment. *See Vill. of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) (in First Amendment cases, courts first decide whether statute "reaches a substantial amount of protected conduct" before deciding if it is facially overbroad or void for vagueness). The First Amendment prohibits laws "abridging the freedom of speech" and generally protects the free communication and receipt of ideas, opinions, and information. U.S Const. amend I; *see Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 390 (1969).

3

These protections are not absolute, however. For example, the State may lawfully proscribe communicative conduct that invades the substantial privacy interests of another in an essentially intolerable manner. *Cohen v. California*, 403 U.S. 15, 21 (1971).

On its face, the statute's prohibition on a broad array of electronic communications made "with intent to harass, annoy, alarm, abuse, torment, or embarrass another" would appear to impede the free communication and receipt of ideas, opinions, and information, thereby reaching a substantial amount of protected speech. *See* Tex. Penal Code Ann. § 42.07(a)(7), (b)(1); *Red Lion Broad. Co.*, 395 U.S. at 390. In *Scott v. State*, however, the court of criminal appeals rejected a similar First Amendment challenge to the telephone-harassment portion of the harassment statute. 322 S.W.3d 662 (Tex. Crim. App. 2010), *cert. denied*, 563 U.S. 936 (2011) (analyzing Tex. Penal Code Ann. § 42.07(a)(4) (the "telephone-harassment statute")).[2] The *Scott* court determined that the telephone-harassment statute, "by its plain text, is directed only at persons who, with the specific intent to inflict emotional distress, repeatedly use the telephone to invade another person's personal privacy and do so in a manner reasonably likely to inflict emotional distress." *Scott*, 322 S.W.3d at 669–70. The court reasoned that, because the "sole intent" of telephone calls prohibited by the harassment

---

[2] At the time of *Scott*, the telephone-harassment statute read:

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:
>
> . . . .
>
> (4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another . . . .

*See* Act of May 26, 2001, 77th Leg., R.S., ch. 1222, § 1, sec. 42.07(a)(4), 2001 Tex. Gen. Laws 2795, 2795, *amended by* Act of May 24, 2013, 83d Leg., R.S., ch. 1278, § 1, 2013 Tex. Gen. Laws 3231, 3231.

statute was to cause emotional distress, the calls were "essentially noncommunicative" for First Amendment purposes. *See id.* The court went on to hold that any communicative conduct to which the subsection might apply "is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner." *Id.* at 670.

Many of our sister courts have held that the reasoning of *Scott* applies equally to the similarly worded electronic-communications-harassment statute.[3] These courts reason that, since the sole intent of the electronic communications encompassed by the electronic-communication-harassment statute is to invade the privacy of the recipient in an essentially intolerable manner, the statute does not reach a substantial amount of speech protected by the First Amendment.[4]

---

[3] *See, e.g.*, *State v. Grohn*, No. 09-20-00075-CR, 2020 WL 6749936 (Tex. App.—Beaumont Nov. 18, 2020, pet. filed); *Ex parte McDonald*, 606 S.W.3d 856 (Tex. App.—Austin 2020, pet. filed); *Lebo v. State*, 474 S.W.3d 402 (Tex. App.—San Antonio 2015, pet ref'd); *Ex parte Sanders*, No. 07-18-00335-CR, 2019 WL 1576076 (Tex. App.—Amarillo Apr. 8, 2019, pet. granted) (mem. op., not designated for publication); *Ex parte Hinojos*, No. 08-17-00077-CR, 2018 WL 6629678 (Tex. App.—El Paso Dec. 19, 2018, pet. ref'd) (not designated for publication); *Ex parte Ogle*, No. 03-18-00207-CR, 2018 WL 3637385 (Tex. App.—Austin Aug. 1, 2018, pet. ref'd) (mem. op., not designated for publication); *Ex parte Reece*, No. 11-16-00196-CR, 2016 WL 6998930 (Tex. App.—Eastland Nov. 30, 2016, pet. ref'd) (mem. op., not designated for publication); *Blanchard v. State,* No. 03-16-00014-CR, 2016 WL 3144142 (Tex. App.—Austin June 2, 2016, pet. ref'd) (mem. op., not designated for publication); *Duran v. State*, No. 13-11-00205-CR, 2012 WL 3612507 (Tex. App.—Corpus Christi Aug. 23, 2012, pet. ref'd) (mem. op., not designated for publication).

[4] Some courts, while applying *Scott*, have nevertheless called on the court of criminal appeals to reexamine the rationale in *Scott*. For example, the decision of the Amarillo Court of Appeals in *Sanders*, which the court of criminal appeals has agreed to review, includes the following footnote:

> Chief Justice Quinn joins in the majority opinion for the reasons stated therein. However, the reasons expressed by Presiding Judge Keller in her dissent in *Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010), the chipping away at *Scott* by the majority in *Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014), and the concurrence of P.J. Keller and Judge Johnson in *Wilson* sways him to invite the Court of Criminal Appeals to reconsider the majority opinion in *Scott*. He too

In *Ex parte Barton*, however, the Fort Worth Court of Appeals concluded that the central holding of *Scott* had been abrogated by the court of criminal appeals' subsequent decision in *Wilson v. State*, and accordingly declined to apply *Scott* to the electronic-communications-harassment statute.[5] *See generally Barton*, 586 S.W.3d 573 (Tex. App.—Fort Worth 2019, pet. granted) (op. on reh'g).[6] The *Barton* court determined "that the *Wilson* decision recognized that a person who communicates with the intent to harass, annoy, alarm, abuse, torment, or embarrass can also have an intent to engage in the legitimate communication of ideas, opinions, information, or grievances." *Id.* at 579 (discussing *Wilson*, 448 S.W.3d 418, 422 (Tex. Crim. App. 2014)). Because the Fort Worth court read *Wilson* to concede that conduct punishable by the statute could have a dual intent—one protected by the First Amendment and one not—it departed from the "sole intent" limiting construction of *Scott* and held the electronic-communications-harassment statute implicated speech protected by the First Amendment.[7] *See id.*

In addition to recognizing the dual-intent issue that *Wilson* introduced into the *Scott* analysis, the Fort Worth Court of Appeals also noted the centrality of "the

___

fears, as expressed by P.J. Keller and Judge Johnson, the potentiality of criminal convictions arising from one's exercise of First Amendment rights. This is not to say he welcomes the mid-supper calls from politicians to vendors but understands that such annoyances are part and parcel of residing in a country where ideas, innovation, intellect, and their urging remain invaluable.

2019 WL 1576076, at *5 n.6.

[5] The Fort Worth court analyzed the 2001 version of the harassment statute, which is materially identical to the current version. *See* Act of May 26, 2001, *supra* note 2.

[6] The court of criminal appeals granted review on November 20, 2019. *Ex parte Barton*, No. PD-1123-19 (Tex. Crim. App. Nov. 20, 2019).

[7] This court has reaffirmed the applicability of *Scott* to the telephone-harassment statute. *See Ex parte Jones*, No. 14-19-00248-CR, 2020 WL 3243968 (Tex. App.—Houston [14th Dist.] June 16, 2020, pet. filed) (mem. op., not designated for publication). In that unpublished opinion, however, the court was not called upon to consider *Wilson*, *Barton*, or the electronic-communications-harassment statute. *See id.*

6

inherently personal and invasive nature of telephone calls" to the analysis of the court of criminal appeals in *Scott*. *Id.* As pointed out by Presiding Judge Keller in dissent, the *Scott* court's conclusion that the telephone-harassment statute involves conduct that "invades the substantial privacy interests of another (the victim) in an essentially intolerable manner" hinges on the idea that telephone calls are made to a "captive audience":

> [T]he telephone is a comparatively personal and private method of communication in which messages can be difficult to screen. . . . [I]t is a device readily susceptible to abuse by a person who intends to be a constant trespasser upon our privacy. When the intent of the actor is to inflict one of the higher-intensity emotional states of harass, abuse, and torment in the **relatively private, "captive-audience" telephone context**, and the actor's conduct is reasonably likely to achieve that end, the First Amendment provides no protection.

*Barton*, 586 S.W.3d at 579 (quoting *Scott*, 322 S.W.3d at 676 (Keller, P.J., dissenting)). While Presiding Judge Keller agreed with the majority that the "captive-audience" telephone context rendered "high intensity" states of harass, abuse, and torment outside of First Amendment protections, it did not do the same for "low intensity" states also covered by the statute, namely annoy, alarm, embarrass, and offend. *See id.* Regardless, her analysis, like that of the *Scott* court, relied on the notion of telephone calls to a person's home reaching a captive audience entitled to special privacy protections.

In the context of the electronic-communications statute, however, the captive-audience analysis of *Scott* loses force. While *Scott* addresses the uniquely invasive nature of telephone calls, "electronic communications" encompasses a far broader array of activities. *See* Tex. Penal Code Ann. § 42.07(b)(1). Crucially, many of the activities do not fall within the "captive-audience" context, but instead require affirmative actions by the user to access the content at issue. Specifically,

7

"electronic communications" is defined to include, among other things, "a communication initiated through the use of" electronic mail, a computer, a camera, a social media platform or application, an Internet website, any other Internet-based communication tool, or facsimile machine. *Id.* These modes of communication are not made to a captive audience, but rather to an audience taking affirmative steps to seek out the content, rendering the analysis materially different from that of telephone harassment. *Cf. United States v. Bowker*, 372 F.3d 365, 379 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1182 (2005) (discussing unique privacy considerations regarding telephone harassment).

Indeed, the very idea of the "captive audience" having the privacy of their homes interrupted by unwanted telephone calls has been radically upended even in the decade since *Scott* was decided. Three years ago, and seven years after the *Scott* decision, the United States Supreme Court observed that the vast proliferation of modes and methods of contact in the "Cyber Age" inject new considerations into First Amendment analysis:

> While we now may be coming to the realization that the Cyber Age is a revolution of historic proportions, we cannot appreciate yet its full dimensions and vast potential to alter how we think, express ourselves, and define who we want to be. The forces and directions of the Internet are so new, so protean, and so far reaching that courts must be conscious that what they say today might be obsolete tomorrow.

*Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017) (stating courts must "exercise extreme caution before suggesting that the First Amendment provides scant protection" to online access and communication); *see also Barton*, 586 S.W.3d at 584 (discussing *Packingham*, 137 S. Ct. at 1736).

Given that the underpinnings of *Scott* have been weakened by *Wilson*, and the telephone communications addressed in *Scott* differ significantly from the

electronic communications at issue here, we agree with the Fort Worth Court of Appeals that *Scott* is not controlling. Given the vast scope of the electronic communications at issue, and absent the limiting construction of *Scott*, we conclude that the electronic-communications-harassment statute goes well beyond a lawful proscription of intolerably invasive conduct and instead reaches a substantial amount of speech protected by the First Amendment. *See Vill. of Hoffman Estates*, 455 U.S. at 494; *Cohen*, 403 U.S. at 21; *Barton*, 586 S.W.3d at 584.

## B.   Level of scrutiny

We turn next to the question of whether the statute is content-based or content-neutral, which determines whether we apply strict scrutiny in analyzing the statute. "Because strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 166 (2015). We begin with the plain text of the statute. Statutes that "place[] a prohibition on discussion of particular topics, while others [are] allowed, [are] constitutionally repugnant." *Hill v. Colorado*, 530 U.S. 703, 722–23 (2000). However, nothing about the plain language of the electronic-communications-harassment statute indicates that any particular topic or subject matter of speech would be restricted (or not) more than speech on any other topic or subject matter. *See* Tex. Penal Code Ann. § 42.07(a)(7). *Cf. Boos v. Barry*, 485 U.S. 312, 319 (1988) (concluding that embassy-picketing statute was content based because "the government has determined that an entire category of speech— signs or displays critical of foreign governments—is not to be permitted"). Nor does the statute facially discriminate on the basis of any particular viewpoint, an

even more blatant and egregious form of content discrimination. *See Reed*, 576 U.S. at 168.

Accordingly, we next consider whether the law's justification or purpose otherwise renders it content-based. *See id.* at 165. In other words, we consider whether the government has adopted a regulation of speech because of disagreement with or distaste for the message it conveys. *See id.* at 164. Protecting privacy and preventing harassment can be compelling government interests. *See Ex parte Thompson*, 442 S.W.3d 325, 348 (Tex. Crim. App. 2014) ("Privacy constitutes a compelling government interest when the privacy interest is substantial and the invasion occurs in an intolerable manner."); *see also Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988) ("The government has a strong and legitimate interest in preventing the harassment of individuals."). The text of the electronic-communications-harassment statute comports with these legitimate purposes, and there is nothing in the record before us suggesting that the legislature enacted the statute for the purpose of suppressing free expression. In the absence of such evidence, we conclude that the law's justification or purpose does not render it content-based. *See Reed*, 576 U.S. at 164.

Under this analysis, the statute is content-neutral, and accordingly we do not presume the invalidity of the statute and need not analyze it under strict scrutiny. *See id.* Rather, we begin with the presumption that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. *See* Code Construction Act, Tex. Gov't Code Ann. § 311.021(1); *Lo*, 424 S.W.3d at 14–15.

## C.    Overbreadth

When a party challenges a statute as both overbroad and vague, we first consider the overbreadth challenge. *See Vill. of Hoffman Estates*, 455 U.S. at 494. Ordinarily, a facial challenge to the constitutionality of a statute can succeed only

when it is shown that the statute is unconstitutional in all of its applications. *State v. Johnson*, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015). The First Amendment overbreadth doctrine provides an exception to this rule whereby a litigant may succeed in challenging a law that regulates speech if "a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 770 (1982)). Thus, the overbreadth doctrine prohibits the government from "banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002). The overbreadth doctrine is "strong medicine" to be employed with hesitation and only as a last resort. *Thompson*, 442 S.W.3d at 348 (citing *Ferber*, 458 U.S. at 769).

Such "strong medicine" is warranted here. As Presiding Judge Keller has noted, the breadth of the electronic-communications-harassment statute is "breathtaking," and has the potential to sweep up large swaths of protected speech:

> This provision is not limited to emails, instant messages, or pager calls. It also applies, for example, to facebook posts, message-board posts, blog posts, blog comments, and newspaper article comments. If a person makes two posts or comments on the internet with the intent to annoy or alarm another, and those two communications are reasonably likely to annoy, alarm, or offend the same person, then a person can be subjected to criminal punishment under this provision.

> Criticism can be annoying, embarrassing, or alarming, and it is often intentionally so. Under this statute, a person can criticize another on the internet once, but not twice. That is true even if the criticism is of the person's political views. A blog owner or authorized moderator who wishes a more genteel approach to debate may have the authority to block or eliminate posts to enforce a more refined atmosphere at the owner's website, but the First Amendment prohibits the government from using the coercion of the criminal law to enforce a more refined

atmosphere on the internet.

*Ex parte Reece*, 517 S.W.3d 108, 111 (Tex. Crim. App. 2017) (Keller, P.J., dissenting to denial of review). Likewise, in *Barton*, the Fort Worth Court of Appeals determined that the electronic-communications statute is unconstitutionally overbroad and vague because it "has the potential to reach a vast array of communications," cautioning that courts must take care in evaluating statutes aimed at electronic communications given their relatively recent and unprecedented ubiquity. *Barton*, 586 S.W.3d at 584 (discussing *Packingham*, 137 S. Ct. at 1736).

We agree that by its plain text the scope of the statute prohibits or chills a substantial amount of protected speech, rendering it unconstitutionally overbroad.[8] *See Ashcroft*, 535 U.S. at 255; *see also Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999) (when analyzing overbreadth challenge courts construe statute in accordance with plain meaning of its language unless language is ambiguous or leads to absurd result) (applying Tex. Gov't Code Ann. § 311.011(a)).

---

[8] For example, the plain language of the statute is so broad the State could conceivably charge people with harassment for posting, sharing, or sending intentionally "annoying" political social media posts, "alarming" photographs of warzones, or "embarrassing" photographs of celebrities, even if they are not directed to the person who is annoyed, alarmed, or embarrassed.

## II.  CONCLUSION

We affirm the trial court's (1) order dismissing the information and (2) habeas-corpus judgment discharging the appellee.


/s/     Charles A. Spain
        Justice

Panel consists of Justices Zimmerer, Spain, and Hassan (Zimmerer, J., dissenting without opinion).

Publish — TEX. R. APP. P. 47.2(b).